# 24-1923-cr

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

JOSHUA GOLSTON,

*Defendant-Appellant.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT

<br>

MEGAN WALL-WOLFF
WALL-WOLFF LLC
299 Broadway, Suite 800
New York, New York 10007
(212) 920-0257

BENJAMIN SILVERMAN
LAW OFFICE OF BENJAMIN SILVERMAN
224 West 30th Street, Suite 302
New York, New York 10001
(212) 203-8074

*Attorneys for Defendant-Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (333456)

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT…………………………………………..1

QUESTIONS PRESENTED……………...…………………………………2

STATEMENT OF THE CASE…………………………………………………2

I.     The government exceeded the thirty-day deadline to indict Mr. Golston as required by the Speedy Trial Act and the additional time was not tolled under the statute……………….………………………………………3

II.    The government violated Mr. Golston's Fourth Amendment rights when it unreasonably delayed applying for a warrant for a cellphone it seized during his arrest and used the fruits of that search against him at trial………..7

III.   Mr. Golston proceeded to trial………………………………………………8

IV.    The government misstated the elements of § 924(c)'s nexus element during rebuttal summation and Mr. Golston was convicted at trial…………..9

SUMMARY OF ARGUMENT…………………………………………………12

ARGUMENT…………………………………………………………………14

I.     The government violated Mr. Golston's rights under the Speedy Trial Act because it failed to indict him within thirty days of his arrest and did not properly toll the additional time under § 3161(h) of the statute……………..14

       A.    Applicable Law…………………………………………………...15

       B.    Background…………………………………………………………16

       C.    The government's email did not toll the speedy trial clock under subsection (D) and the Indictment must be dismissed………………..20

i

1.     The continuance request does not qualify as an event that triggers the exclusionary periods set forth in subsection (D) or subsection (H)……….…………………………………20

2.     The Indictment should have been dismissed with prejudice…..25

II.    Mr. Golston's motion to suppress evidence seized from the Samsung Cellphone should have been granted………………………………..…27

    A.    Applicable Law…………………………………………..…28

        1.     The Fourth Amendment………………………………28

        2.     The exclusionary rule………………………………29

        3.     Standard of review……….……………………………29

    B.    Analysis…………………………….…………………………..30

        1.     The delay in applying for a search warrant violated the Fourth Amendment and this Court's precedent………………………30

        2.     The district court did not correctly analyze the *Smith* factors….32

        3.     The exclusionary rule applies………………………………36

        4.     Mr. Golston was harmed by the cellphone evidence…………..37

III.   The government's misstatement of law regarding the nexus element of 18 U.S.C. § 924(c) deprived Mr. Golston of his right to a fair trial and he should be granted a new trial on Count Three..................39

    A.    Applicable Law…………………………………………..…40

        1.     Section 924(c) requires "some nexus" between the firearm and a predicate offense…………...…………………….…….40

        2.     Government misconduct during summation………………….41

ii

3. Standard of Review……………………...……………42

B. Analysis……………………………………………………42

1. The government engaged in severe misconduct when it misstated the § 924(c) count's nexus element…………………42

2. The district court did not take sufficient steps to cure the misconduct…………………………………………………...46

3. The conviction was far from certain absent the misconduct…..48

CONCLUSION………………………………………………………51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Anderson v. Bessemer City*,
  470 U.S. 564 (1985) ...................................................................30

*Boyd v. United States*,
  116 U.S. 616 (1886) ...................................................................33

*Bumper v. North Carolina*,
  391 U.S. 543 (1968) ...................................................................38

*Carpenter v. United States*,
  585 U.S. 296 (2018) ...................................................................33

*Davis v. United States*,
  564 U.S. 229 (2011) ...................................................................29

*Herring v. United States*,
  555 U.S. 135 (2009) ...................................................................29

*Katz v. United States*,
  389 U.S. 347 (1967) ...................................................................34

*Melendez v. United States*,
  518 U.S. 120 (1996) ...................................................................21

*Riley v. California*,
  573 U.S. 373 (2014) ...................................................................32

*United States v. Babwah*,
  972 F.2d 30 (2d Cir. 1992) ........................................................38

*United States v. Boles*,
  914 F.3d 95 (2d Cir. 2019) ........................................................29

*United States v. Burgard*,
  675 F.3d 1029 (7th Cir. 2012) ...................................................35

*United States v. Caparella*,
  716 F.2d 976 (2d Cir. 1983) ................................................ 15, 25

*United States v. Castillo*,
  406 F.3d 806 (7th Cir. 2005) .....................................................40

iii

*United States v. Ceballos–Torres*,
    218 F.3d 409 (5th Cir. 2000) ..................................................................41

*United States v. Coplan*,
    703 F.3d 46 (2d Cir. 2012) .......................................................... 42, 50

*United States v. Daugerdas*,
    837 F.3d 212 (2d Cir. 2016) ..................................................................41

*United States v. Ferguson*,
    246 F.3d 129 (2d Cir. 2001) ..................................................................42

*United States v. Forbes*,
    790 F.3d 403 (2d Cir. 2015) ..................................................................42

*United States v. Ganias*,
    824 F.3d 199 (2d Cir. 2016) ..................................................................30

*United States v. Gansman*,
    657 F.3d 85 (2d Cir. 2011) ....................................................................42

*United States v. Giambrone*,
    920 F.2d 176 (2d Cir. 1990) ...................................................... 25, 26, 27

*United States v. Isiofia*,
    370 F.3d 226 (2d Cir. 2004) ..................................................................30

*United States v. James*,
    712 F.3d 79 (2d Cir. 2013) ....................................................................42

*United States v. Kaiser*,
    609 F.3d 556 (2d Cir. 2010) ..................................................................38

*United States v. Lewis*,
    62 F.4th 733 (2d Cir. 2023) ........................................................ 11, 45

*United States v. Louis*,
    814 F.2d 852 (2d Cir. 1987) ........................................................ 23, 24

*United States v. Lucky*,
    569 F.3d 101 (2d Cir. 2009) ..................................................................15

*United States v. Lynch*,
    726 F.3d 346 (2d Cir. 2013) ........................................................ 15, 17

*United States v. Mapp*,
    170 F.3d 328 (2d Cir. 1999) ..................................................................41

*United States v. Martin*,
    157 F.3d 46 (2d Cir. 1998) .........................................................28

*United States v. Pabon*,
    871 F.3d 164 (2d Cir. 2017) ......................................................29

*United States v. Palmer*,
    2021 WL 1614837 (S.D.N.Y. Apr. 26, 2021) ............................ 22, 23

*United States v. Place*,
    462 U.S. 696 (1983) ..................................................................28

*United States v. Sheehan*,
    838 F.3d 109 (2d Cir. 2016) ......................................................41

*United States v. Smith*,
    778 F.2d 925 (2d Cir. 1985) ......................................................41

*United States v. Smith*,
    967 F.3d 198 (2d Cir. 2020) ............................................... *passim*

*United States v. Snow*,
    462 F.3d 55 (2d Cir. 2006) ........................................ 10, 40, 44, 45

*United States v. Taylor*,
    487 U.S. 326 (1988) ............................................................ 25, 27

*United States v. Vayner*,
    769 F.3d 125 (2d Cir. 2014) .................................................. 38, 39

*United States v. Williams*,
    526 F. App'x 29 (2d Cir. 2013) ...................................................4

*Zervos v. Verizon N.Y., Inc.*,
    252 F.3d 163 (2d Cir. 2001) ......................................................42

## Statutes & Other Authorities:

U.S. Const., amend. IV ................................................... *passim*

18 U.S.C. § 922(g)(1) .........................................................5

18 U.S.C. § 924(c) ......................................................... *passim*

18 U.S.C. § 924(c)(1)(A) ....................................................40

18 U.S.C. § 924(c)(1)(A)(i) ................................................................5

18 U.S.C. § 3060(b) ...........................................................................16

18 U.S.C. § 3060(b)(1) .........................................................................3

18 U.S.C. § 3060(d) ..............................................................................4

18 U.S.C. § 3161 .................................................................................14

18 U.S.C. § 3161(b) ...........................................................14, 15, 16, 20

18 U.S.C. § 3161(h) ....................................................................2, 14, 15

18 U.S.C. § 3161(h)(1)(D) ..................................................................15

18 U.S.C. § 3161(h)(1)(H) ..................................................................15

18 U.S.C. § 3161(h)(7)(A) ...................................................4, 16, 17, 19

18 U.S.C. § 3162(a) ............................................................................14

18 U.S.C. § 3162(a)(1) ............................................................15, 20, 25

18 U.S.C. § 3231 ...................................................................................1

21 U.S.C. § 812 .....................................................................................5

21 U.S.C. § 841(a)(1) ............................................................................5

21 U.S.C. § 841(b)(1)(C) .......................................................................5

28 U.S.C. § 1291 ...................................................................................1

Fed. R. Crim. P. 5.1 ...............................................................................3

Fed. R. Crim. P. 5.1(c) ......................................................................4, 16

Fed. R. Crim. P. 33 ...........................................................11, 13, 42, 47

Fed. R. Crim. P. 41(g) .........................................................................31

Fed. R. Crim. P. 41(f)(1)(B) ..................................................................8

Black's Law Dictionary 1013 (6th ed. 1990) ........................................21

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
-----------------------------------------------------------------X

**UNITED STATES OF AMERICA,**

   **-**against-

                                    **24-1923**

**JOSHUA GOLSTON,**

      Defendant-Appellant,

-----------------------------------------------------------------X

APPEAL FROM FINAL JUDGMENT OF
THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
_____

BRIEF FOR DEFENDANT-APPELLANT JOSHUA GOLSTON
_____

### JURISDICTIONAL STATEMENT

This is an appeal from a final judgment entered on July 15, 2024, in the

United States District Court for the Southern District of New York (Torres, J.). A

notice of appeal was timely filed on July 16, 2024. A. 295.[1] The district court had

subject matter jurisdiction under 18 U.S.C. § 3231. Jurisdiction is conferred in this

Court under 28 U.S.C. § 1291.

---

[1] Numbers preceded by "A." refer to pages in the Appendix and numbers preceded by "DE" refer to entries on the district court's docket sheet.

## QUESTIONS PRESENTED

1.     Whether the government violated the Speedy Trial Act when it did not indict Joshua Golston until 42 days after his arrest and did not toll the speedy trial clock pursuant to 18 U.S.C. § 3161(h).

2.     Whether the government violated the Fourth Amendment and this Court's precedent in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), when it waited 37 days before applying for a warrant to search a cellphone that it seized from Mr. Golston during his arrest.

3.     Whether the government's misconduct when it mis-instructed the jury on the § 924(c) firearm offense's "nexus" element during rebuttal summation warrants a new trial.

## STATEMENT OF THE CASE

Joshua Golston was convicted following trial on a three-count indictment charging possession of narcotics with intent to distribute; possession of a firearm; and possessing the firearm during an in relation to, or in furtherance of, the drug offense. This appeal concerns three issues: first, the government violated the Speedy Trial Act when it failed to indict Mr. Golston within thirty days of his arrest. It claimed that it tolled the clock by asking a magistrate judge to exclude time in an *ex parte* email that the judge never even reviewed, much less entertained. The law does not support the government's tolling theory. Second, the

2

government also violated the Fourth Amendment when it unreasonably delayed applying for a search warrant for a cellphone seized incident to Mr. Golston's arrest, the fruits of which were used against him at trial. And finally, the government mis-instructed the jury regarding the "nexus" element of 18 U.S.C. § 924(c) during its rebuttal summation, causing the jury such confusion about the law that it deadlocked on that count before it was told to spend another day deliberating on the element that the government had misstated. Each of these errors, on their own and cumulatively, warrants a new trial.

## I.   The government exceeded the thirty-day deadline to indict Mr. Golston as required by the Speedy Trial Act and the additional time was not tolled under the statute.

Joshua Golston was arrested on June 7, 2023, in a coffee shop on Delancey Street in Manhattan. A. 17-18. The government alleged that he sold narcotics to an undercover officer and was found in possession of narcotics and a firearm on his person. A. 16-17. He was presented in magistrate court the next day and appointed counsel. A. 23-43. Mr. Golston expressed his desire to proceed expeditiously and declined to waive his preliminary hearing, so the magistrate judge on duty, the Honorable Sarah Netburn, scheduled a preliminary hearing for two weeks later, ensuring a hearing would be held within the time limits set by 18 U.S.C. § 3060(b)(1) and Fed. R. Crim. P. 5.1. A. 42.

3

On June 15, 2023, counsel for the parties conferred regarding what they described in their correspondence as a "rollover," a colloquial term in the district referring to a continuance of the thirty-day deadline to indict a defendant under 18 U.S.C. § 3161(h)(7)(A). A. 51. A week later, the government sent an *ex parte* email to the chambers email address for the magistrate judge on duty that week, the Honorable Barbara Moses, attaching an unsigned affirmation and proposed order requesting a continuance in the interests of justice – meaning an extension of the 30-day deadline to indict someone that exists if, and only if, they have waived their right to be indicted within 14 days absent a preliminary hearing. A. 52-56. The email did not copy defense counsel, chambers staff did not respond to the government's request, and no continuance order was ever issued or docketed. The preliminary hearing was not held, and Mr. Golston was not informed of the requested "rollover" or asked whether he consented to waiving the preliminary hearing or time limit for indictment. DE 25 at 3-4. As he explicitly did not waive a preliminary hearing, Mr. Golston was entitled to be released at that point because he was not afforded a hearing within 14 days of his presentment. *See* 18 U.S.C. § 3060(d); Fed. R. Crim. P. 5.1(c).[2]

---

[2] Because Mr. Golston was subsequently indicted, he is not seeking relief with respect to the violation of his right to a preliminary hearing. *See United States v. Williams*, 526 F. App'x 29, 36 (2d Cir. 2013). However, the government's conduct is relevant to the prejudice analysis.

On July 19, 2023, Mr. Golston was indicted – 42 days after he was arrested and a full 12 days after the speedy trial clock had expired (the "Indictment"). A. 20-22. The Indictment contained three counts, charging Mr. Golston with distributing narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C) ("Count One"); possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) ("Count Two"); and firearms use, carrying, and possession, during and in relation to the narcotics offense charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Three"). *Id.* Mr. Golston was arraigned before the magistrate judge on duty, the Honorable James L. Cott. A. 44-50. At the proceeding, the government requested a continuance in the interests of justice between the date of the arraignment and the next conference in the case. A. 46-47. The government did not inform either the magistrate judge or the defendant that it had not obtained a continuance for the time that had elapsed between the expiration of the speedy trial clock and the filing of the Indictment. *Id.* Mr. Golston attempted to address the judge regarding his speedy trial rights, but the judge instructed him to speak with his lawyer privately. A. 48-49. The magistrate judge did not address Mr. Golston's question regarding speedy trial rights and the hearing was concluded. *Id.*

On August 23, 2023 – over ***two months*** after the government's *ex parte* email to a magistrate judge requesting a continuance and a month after Mr.

5

Golston was indicted – the government apparently realized it had never obtained an order granting a continuance. It emailed Judge Moses's chambers again and requested a copy of the signed continuance order that it had requested two months earlier. A. 57-58. The government did not copy defense counsel or alert counsel to the fact that it had not actually obtained an order of continuance tolling the speedy trial clock before the Indictment was returned. Nor did it tell the district judge to whom the case had by then been assigned. The magistrate judge's deputy responded that, because the law clerks managed criminal paperwork in Judge Moses's chambers rather than the deputy, the order was apparently not processed or signed. A. 83-84. Later that day, Magistrate Judge Moses followed up with the government and explained that she could not sign the continuance order because the government never signed its original affirmation in support of it. A. 59-65. The government re-submitted a signed version of the affirmation and proposed continuance order to chambers the next day. A. 76-82. Judge Moses never signed the order. A. 87. The government never disclosed any of this correspondence to defense counsel or the district court – meaning it never told anyone that it realized it had exceeded the speedy trial clock and that it had tried unsuccessfully to fix the problem – until *after* Mr. Golston filed a speedy trial motion months later.

6

On September 12, 2023, the parties appeared before the district court for an initial conference. Mr. Golston's counsel at the Federal Defenders was relieved and substitute counsel was appointed. A. 4.

Counsel moved pretrial to dismiss the Indictment under the Speedy Trial Act. A. 6. After defense counsel filed the motion, the government then – and only then – disclosed that it realized there was a Speedy Trial Act problem that it had tried to fix *ex parte*, unbeknownst to either the defense or the district court. The district court denied the motion because it mistakenly concluded that the government triggered an automatic thirty-day extension of the deadline to indict Mr. Golston by sending an *ex parte* email request for an order to continue in the interests of justice – a request that never made it to the judge, was never reviewed, and was never granted, even after the government tried to fix its error *nunc pro tunc* without informing defense counsel or the district judge.

## II.   The government violated Mr. Golston's Fourth Amendment rights when it unreasonably delayed applying for a warrant for a cellphone it seized during his arrest and used the fruits of that search against him at trial.

When Mr. Golston was arrested, the government seized a Black Samsung Smartphone (the "Samsung Cellphone" or "cellphone") from his person, along with other items. Mr. Golston promptly requested the return of the cellphone through counsel, as did his mother. A. 158. The government waited until July 14,

7

2023 – 37 days later – to apply for a warrant to search the cellphone. A. 95-122.
The search warrant application's probable cause statement contains no information
learned after the day of Mr. Golston's arrest, meaning that the government had all
the information necessary to apply for a search warrant when Mr. Golston was
arrested, but it declined to do so. A. 105-112.

The search warrant application was granted on July 14, 2023, and required
the government to execute the warrant on or before July 28, 2023. A. 95. The
government failed to execute the warrant within 14 days, and also failed to
complete the inventory attached to the warrant as required both by Rule
41(f)(1)(B) and the terms of the warrant itself. A. 96. The failure to produce the
required inventory and file it with the magistrate judge allowed the government to
avoid notifying the judge that it had not complied with the warrant's required time
limit. Counsel moved pretrial to suppress the contents of the search, and the district
court denied the motion at the final pretrial conference. DE 36, A. 7, A. 139.

### III.    Mr. Golston proceeded to trial.

Mr. Golston proceeded to trial. The government contended that Mr. Golston
sold $40 worth of substances containing detectable amounts of cocaine and
fentanyl to an undercover officer on the morning of June 7, 2023 and that he
possessed narcotics and a firearm when he was arrested following the sale. A. 166-
179. The undercover officer testified at trial, along with another member of the

8

field team who searched Mr. Golston and reportedly recovered the gun. The government also called a drug analyst. A. 180-182. Audio and video recordings documented the interaction between Mr. Golston and the officers, and the government presented physical evidence of the items seized during the arrest. The government also presented text messages and other evidence from the cellphone to meet its burden of proving that Mr. Golston possessed narcotics on his person with intent to sell them. A. 205-208.

### IV. The government misstated the elements of § 924(c)'s nexus element during rebuttal summation and Mr. Golston was convicted at trial.

The most fiercely contested issue at the trial was whether Mr. Golston could be found to have simultaneously possessed drugs and a firearm – which, without more, would make him not guilty of the § 924(c) count – or whether he possessed the gun "during and in relation to" or "in furtherance of" the narcotics offense charged in Count One. This "nexus" element distinguishes § 924(c) from a mere firearm possession charge – it justifies Congress's decision to impose substantially higher penalties for that charge. The government's evidence on this element was so weak that it was the subject of a pretrial motion to dismiss, DE 25, and both parties knew going into the trial that it would be a central focus.

During its initial summation, the government correctly described the "nexus" element of 18 U.S.C. § 924(c) (Count Three) to the jury, stating that the

9

jury should consider a number of factors in determining whether a sufficient nexus existed to convict Mr. Golston on that count. A. 227. Aware that § 924(c) requires more than merely simultaneously possessing a firearm while selling drugs, the government argued to the jury that it proved the nexus requirement because Mr. Golston used the gun to protect his "valuable" $110 in cash and assorted, tiny baggies and capsules of drugs and crushed pills. *Id.* Defense counsel effectively countered in its summation that this argument made no sense – an iPhone and designer shoes like the ones regularly worn in the lower Manhattan neighborhood where Mr. Golston was arrested are more valuable, and no one needs a gun to protect those items in New York City. A. 233. Mr. Golston could not be found guilty under § 924(c) merely because he possessed the gun simultaneously with, but not "during and in relation to" or "in furtherance of," his illegally possessing drugs.

The government was clearly caught off guard by this defense. As a result, during its rebuttal summation – that is, after defense counsel no longer had an opportunity to address the jury – the government misstated the nexus element of § 924(c), telling the jury "that accessibility of the gun during those drug deals, that's all you need." A. 237. But that is precisely ***not*** the law. *See United States v. Snow*, 462 F.3d 55, 62-63 (2d Cir. 2006); *United States v. Lewis*, 62 F.4th 733, 745–46 (2d Cir. 2023).

10

After summations, the district court instructed the jury regarding the nexus element. A. 243. Defense counsel objected to the government's misstatement of the law during its rebuttal and requested a curative instruction. A. 247. Counsel noted that the district court's jury instruction, written before the government's summation misconduct, did not address or correct the government's unanticipated misstatement of the law. *Id*. The government objected to any curative instruction, and the district court declined to provide one. *Id.*

After deliberating for approximately four hours, the jury sent a note stating that it was hung on the § 924(c) count and indicating that it was specifically hung on the nexus element that the government had misstated in its rebuttal. A. 251. The district court instructed the jury to continue deliberating. *Id.* Following nearly five more hours of deliberations the next day, the jury reached a verdict convicting Mr. Golston of all counts in the Indictment. A. 254.

Mr. Golston moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure based on the government's misconduct during rebuttal summation. The district court denied the motion. A. 256-261.

Mr. Golston was sentenced to five years and one day in prison – the 5-year mandatory minimum on the § 924(c) count and one day on each of the other two counts. A. 289. He is serving his sentence.

11

## SUMMARY OF ARGUMENT

The government violated the Speedy Trial Act when it failed to indict Mr. Golston within thirty days of his arrest. The government acknowledged that it missed the deadline but tried to save the Indictment by claiming that the deadline was tolled when it emailed an *ex parte* continuance request to the wrong person – a request that was never reviewed or considered by any judge, much less granted. When the government realized its error two months later, it received confirmation that the request had never actually been submitted to the magistrate judge. It then attempted to fix its mistake with another *ex parte* email requesting that the continuance order be entered *nunc pro tunc*, but the magistrate judge did not sign or enter the order. The government never informed either defense counsel or the district judge about any of this until after Mr. Golston filed his pretrial motion invoking his speedy trial rights. Accordingly, the time between the government's email and the expiration of the speedy trial clock was not excluded under § 3161(h) and the district court erred when it failed to dismiss the Indictment.

Next, the district court should have granted Mr. Golston's motion to suppress evidence recovered from the Samsung Cellphone because the government violated his Fourth Amendment rights when it unreasonably delayed applying for a search warrant. Under this Court's well-established precedent in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), district courts must balance certain factors to

determine whether a delay in applying for a search warrant is reasonable under the Fourth Amendment. In *Smith*, the Court concluded that a 31-day delay was unreasonably long when the government invoked only routine investigatory matters. The facts here are very similar to those in *Smith*, and the 37-day delay in this case was longer than the period held unreasonable in *Smith*. The district court mis-applied the *Smith* factors when it denied Mr. Golston's motion to suppress.

Finally, in its second jury address at the end of the trial, the government misstated the law regarding the "nexus" element of § 924(c) – a statute carrying a stiff penalty that applies only when the gun has a nexus to a predicate offense, and not when a gun is merely possessed at the same time as the commission of that offense. The jury deadlocked on that very count, and this very element, during deliberations. The district court denied defense counsel's request for a curative instruction, and after several more hours of deliberating the jury convicted Mr. Golston. The legal confusion engendered by the government's misstatement of the law deprived Mr. Golston of his right to a fair trial and the district court erred when it denied his motion for a new trial pursuant to Rule 33. The Court should vacate his conviction on Count Three and remand for a new trial on that count.

13

## ARGUMENT

### Point I

**The government violated Mr. Golston's rights under the Speedy Trial Act because it failed to indict him within thirty days of his arrest and did not properly toll the additional time under § 3161(h) of the statute.**

The Indictment must be dismissed because the government failed to indict Mr. Golston within thirty days of his arrest as required by the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* 18 U.S.C. §§ 3161(b), 3162(a). The Indictment was returned 42 days after Mr. Golston was arrested and 27 days after the preliminary hearing deadline expired, all without an order of excludable delay or Mr. Golston even being informed that the government was requesting a continuance. Mr. Golston spent 12 days unlawfully detained after the Speedy Trial Act's deadline had passed. The only question is whether there is a basis to toll the additional time under 18 U.S.C. § 3161(h), as the government argued below. There is not, and the district court erred when it concluded that the government's *ex parte* email request to the duty magistrate's chambers tolled the speedy trial clock under that subsection. Accordingly, dismissal is mandatory. 18 U.S.C. §§ 3161(b), 3162(a)(1).

14

### A. Applicable Law

The Speedy Trial Act provides that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Certain periods of time may be excluded from the thirty-day window, which are set forth in 18 U.S.C. § 3161(h). As relevant here, § 3161(h)(1)(D) ("subsection (D)") provides that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excludable. § 3161(h)(1)(H) ("subsection (H)") also excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." If the government fails to indict a defendant within that period, "such charge against that individual . . . **shall** be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1) (emphasis added); *United States v. Caparella*, 716 F.2d 976, 978 (2d Cir. 1983).

The Court reviews "the district court's findings of fact as they pertain to a speedy trial challenge for clear error and its legal conclusions *de novo*." *United States v. Lynch*, 726 F.3d 346, 351 (2d Cir. 2013) (quoting *United States v. Lucky*, 569 F.3d 101, 106 (2d Cir. 2009) (internal quotation marks omitted).

15

### B.     Background

Joshua Golston was arrested on June 7, 2023 and was presented in Magistrate Court the next day. A. 3. Upon his presentment, Mr. Golston was adamant that he did not waive his preliminary hearing right and Magistrate Judge Netburn scheduled a preliminary hearing for June 22, 2023, one day before the 14-day deadline under 18 U.S.C. § 3060(b) and Fed. R. Crim. P. 5.1 (c). A. 42.

On June 15, 2023, the government sent an email to Mr. Golston's then-counsel "confirm[ing]" a phone call in which they "agree[d] to a rollover" and added, "I'm assuming we'll do thirty days." A. 51. Mr. Golston's counsel responded, "Confirmed." *Id*. A "rollover" is commonly understood among practitioners in the Southern District of New York to refer to a continuance, authorized under 18 U.S.C. § 3161(h)(7)(A), of the thirty-day deadline to indict a defendant otherwise required by 18 U.S.C. § 3161(b). It is undisputed that Mr. Golston never knew of this exchange at the time and would not have consented if he did.

On June 22, 2023, the government sent an *ex parte* email to the chambers email address for the Honorable Barbara Moses, the magistrate judge on duty that week. The email attached an ***unsigned*** affirmation and proposed order requesting a continuance, stating that the parties planned to discuss a possible disposition and that Mr. Golston's then-counsel consented to the request. A. 52-56. The

16

government did not copy Mr. Golston's counsel on the email, although it took care to copy other members of the prosecution team and the Southern District's Arraignments Unit email address. Faced with this *ex parte* request supported by an unsigned and unsworn affidavit, Judge Moses never signed or issued the requested order to exclude time in the interests of justice. A. 87. Mr. Golston was never informed of the rollover request and was not asked if he consented to an adjournment of the preliminary hearing or extension of time to file an indictment, and he would not have consented if he had been asked.[3] The June 22nd preliminary hearing was not held, and he did not understand why not.

On July 19, 2023, Mr. Golston was indicted – 42 days after he was arrested. A. 20-22. On July 31, 2023, he was arraigned before the Honorable James L. Cott. A. 44. The government did not inform Judge Cott that the thirty-day deadline to indict had been exceeded, nor did it mention that it never obtained an order to exclude time in the interests of justice. *See* A. 44-50. Mr. Golston asked to address the court regarding his speedy trial rights at that hearing, but the magistrate judge instructed him to speak with his lawyer privately. *See* A. 48-49.

---

[3] While it is true that Mr. Golston's consent is not strictly necessary to exclude time under § 3161(h)(7)(A), *see, e.g.*, *Lynch*, 726 F.3d at 356, it is clearly important to notify the defendant and obtain his consent if at all possible, and it is relevant to the analysis of whether the Indictment should be dismissed with prejudice.

17

On August 23, 2023 – over two months after Mr. Golston was arrested and over a month *after* the speedy trial clock had expired – the government apparently realized its error and sent another *ex parte* email to Judge Moses's chambers requesting a signed copy of the continuance order it had requested two months earlier. A. 57. The government again did not copy defense counsel on the email. Judge Moses's deputy responded to the email and explained that the judge's law clerks manage the paperwork relating to criminal cases, and not the deputy. A. 83. Later that day, Judge Moses herself followed up with the government and explained that she could not sign the *nunc pro tunc* continuance order because the affirmation in support of it was unsigned, meaning it was not sworn. A. 66. _. The next day, the government re-submitted a signed version of the affirmation and proposed order to chambers, again keeping everything *ex parte* and without disclosing this issue – including Judge Moses's refusal to exclude time *nunc pro tunc* – either to defense counsel or the district judge. A. 78-82. Judge Moses never signed the revised proposed order to continue. A. 87.

Three weeks later, on September 12, 2023, the parties appeared at the first conference before the district court. Mr. Golston was upset and did not understand why he did not have a preliminary hearing and why the speedy trial clock was tolled, and he asked that the Federal Defenders be relieved. The district court granted the request and appointed substitute CJA counsel. A. 4.

18

Defense counsel then moved pretrial to dismiss the Indictment because the government failed to indict Mr. Golston within thirty days of his arrest and its *ex parte* email requesting a continuance did not properly toll the speedy trial clock within the meaning of subsection (D). DE 25. After the motion was filed, the government disclosed its correspondence with magistrate court revealing that it never received an order to continue in the interests of justice – it first attached some of the correspondence to its opposition brief, and then provided the balance to defense counsel upon request. The government argued that its June 22, 2023 email to the duty magistrate judge's chambers requesting an order to continue in the interests of justice under § 3161(h)(7)(A) – an application that the judge never signed – automatically tolled the speedy trial clock for 30 days, and therefore there was no violation of the statute. DE 28 at 13.

The district court denied the motion, finding that a period of 30 days was automatically tolled and excludable from the date of the government's email and there was therefore no violation of the Speedy Trial Act. A. 85-90.

**C.** **The government's email did not toll the speedy trial clock under subsection (D) and the Indictment must be dismissed.**

    **1.** **The continuance request does not qualify as an event that triggers the exclusionary periods set forth in subsection (D) or subsection (H).**

The government violated the Speedy Trial Act because it waited 42 days before indicting Mr. Golston, exceeding the statute's deadline by 12 days. 18 U.S.C. § 3161(b). Those 12 days are not excluded from the speedy trial clock under subsection (D) because the government's email to the duty magistrate's chambers does not qualify as a motion that was "filed" within the meaning of that subsection – the request was never submitted in a manner that facilitated its review by the judge. As a result, the indictment "***shall*** be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1) (emphasis added).

To avoid this required outcome, the government argued that it tolled the time by sending an email. This was not how the magistrate judge accepted paperwork in criminal cases, and the judge never received it for review. A. 83.

The government did not follow up on its *ex parte* email requesting an order to continue, nor apparently did it check the docket sheet to make sure the request had been granted or ask the judge's chambers if it was under consideration before the Speedy Trial deadline expired on July 7, 2023. It appears the government realized its error over two months later, when it sent a second *ex parte* email to the

20

magistrate judge's chambers on August 23, 2023 – over one month after Mr. Golston had already been indicted. Notably, the government did not alert defense counsel, nor did it alert the Honorable Analisa Torres, the district judge to whom the case had been assigned – it instead tried to quietly fix its mistake by attempting to have the continuance order issued *nunc pro tunc*.[4] A. 76. And the magistrate judge did ***not*** ultimately accept the late filed, *nunc pro tunc* request. In fact she rejected it twice – first when she instructed the government to re-submit a signed affirmation and later when she declined to sign or docket the order. A. 59, 66.

The government argued below that its *ex parte* email qualified as a motion that was filed for the purposes of subsection (D). A "motion" generally means "'[a]n application made to a court or judge for purpose of obtaining a rule or order directing some act to be done in favor of the applicant.'" *Melendez v. United States*, 518 U.S. 120, 126 (1996) (quoting Black's Law Dictionary 1013 (6th ed. 1990)). A motion therefore cannot be "filed" until it is actually submitted to a judge in a way that facilitates its review. The government was free to create a clear record by filing its request on the docket. It also could have ensured that defense counsel was copied on any correspondence with the court so that all parties were kept apprised of requests to the judge. At the very least, it could have followed up

---

[4] The government did not make its *nunc pro tunc* request explicit, nor did it present authorities permitting it to make such a request.

to make sure its email was received by the correct party before the speedy trial clock ran out. It did none of these things. Accordingly, the government did not "file" its application in a manner sufficient to trigger subsection (D). By its own terms, subsection (D) only runs "from the filing of the motion." Here, because the request was never filed or submitted, subsection (D) was never triggered before the speedy trial deadline had passed. For the same reasons, the government also did not trigger the "under advisement" provision of subsection (H).

The district court erred when it concluded that the government had tolled the speedy trial clock by emailing its request to the magistrate judge. A. 89-90. Its reasons contrasted with *United States v. Palmer*, where the court concluded that the government's continuance request was "filed" not when the government first sent its email to the district judge's chambers alerting the court to a continuance request, but when the court "received the hard copy" three days later. 2021 WL 1614837, at *6 (S.D.N.Y. Apr. 26, 2021). Unlike in *Palmer*, here the government did not submit its request to the magistrate judge in hard copy and it was never filed. While it is true that a motion need not always be filed on the docket, it must be submitted in a way that it will come to a judge's attention – otherwise it does not actually request a judicial action or decision. That is why *Palmer* did not treat the government's email requesting a continuance as a "filing" under the statute; in the absence of an ECF submission, only a more traditional hard copy submission to

the courthouse three days later – presumably hand delivered to the judge's chambers by the government's courier – constituted the necessary "filing" that ensured the judge would be able to review it. *Id*. Here, the continuance request was never docketed or granted, and was not even submitted in a way that facilitated its review by the magistrate judge. Nor did the judge grant the request *nunc pro tunc* when the government realized its mistake two months later, by which point the request was already moot. To hold that an *ex parte* email request qualifies as an event that automatically tolls the speedy trial clock would allow the government to subvert the purposes of the Speedy Trial Act and exclude time – unbeknownst to defendants and their counsel – by submitting applications in a manner that does not actually facilitate review by a judge.

The district court mistakenly applied *United States v. Louis*, 814 F.2d 852, 857 (2d Cir. 1987), in which this Court found that the ***defendant's*** motion "improperly filed with the Magistrate and not received by the government" was nonetheless "a pending motion in the Speedy Trial Act sense." A. 90. *Louis* is inapposite: it did not involve a situation where the government emailed a continuance request to the wrong court staff member rather than filing it on ECF. In *Louis*, the defendant filed a *pro se* motion to substitute counsel with the magistrate judge but failed to serve papers on the government or his current counsel. 814 F.2d at 855. The magistrate judge apparently forwarded the motion to

23

the district court judge, who eventually held a hearing on the matter and excluded all time from the first filing of the motion with the magistrate. *Id*. Thus the motion in *Louis* qualified as a filing as it was received and reviewed by a judge. As even the district court had to acknowledge in passing in its ruling in this case, A. 90, *Louis* is distinguishable because it was the ***defendant*** who improperly filed the motion, not the government – the motion's *ex parte* nature did not present the danger that the government could toll the speedy trial clock without the defendant's knowledge. Moreover, the defendant in *Louis* had later tried to use his own error against the government and invoke the Speedy Trial Act to dismiss the case, a clearly improper tactic that is not at issue here. Finally, courts are more lenient in enforcing procedural rules in *pro se* filings like the one in *Louis* because defendants are typically less familiar with filing rules – not so with the government. The district court did not afford sufficient consideration to this critical distinction. *Id*. The facts here present a case where the government sent an email request to the wrong person – it did not improperly file a motion that was nonetheless received and acted upon by a judge like in *Louis*. As a result, the government's request was never received by a judge for review prior to the expiration of the speedy trial clock. It does not qualify as the filing of a motion within the meaning of subsection (D) and the government failed to trigger an exclusion of time under the statute.

24

## 2.    The Indictment should have been dismissed with prejudice.

The district court did not reach the issue of whether dismissal with prejudice was warranted, and therefore the Court should dismiss the Indictment and remand for a hearing to assess that issue. Pursuant to the statute, courts must consider certain factors in determining whether to dismiss an indictment with prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1); *United States v. Taylor,* 487 U.S. 326, 333 (1988). Here, each of the factors weighs in favor of dismissal with prejudice. The government offered no compelling reason for its negligence in failing to properly submit a continuance motion that would toll the speedy trial clock or to ensure that its request was received. This Court has affirmed the dismissal of indictments with prejudice when delay was caused by carelessness, inadvertence, or negligence. *See United States v. Caparella*, 716 F.2d at 980-82 (dismissing indictment with prejudice where government's failure to indict within 30 days resulted from mere negligence). And courts express concern where, as here, the government exhibits a "lackadaisical attitude" to complying with the Speedy Trial Act. *See, e.g.*, *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990).

The government acknowledged below that it failed to realize its continuance request had not been addressed and argued that it had operated under the good faith belief that it had been granted. It is hard to see how the government could possibly have made such an assumption, given that it never received a confirmation from the court, never checked with the magistrate judge as the indictment deadline approached, and did not even notice its mistake until two months later. A. 57. The government's conduct demonstrates a "lackadaisical attitude" this Court has held justifies a dismissal with prejudice. *Giambrone*, 920 F.2d at 180. That the government tried to fix its mistake after the fact by attempting to obtain a *nunc pro tunc* order – without notifying the defendant or the district judge – does not support its claim of good faith. The magistrate judge did not allow the government to do so and did not grant its request. A. 87. Likewise, the Court should not allow the government to ignore speedy trial rights and then fix any violations with *ex parte* applications after the deadline has expired.

The remaining factors also weigh in Mr. Golston's favor. While all crimes are certainly serious, a hand-to-hand drug sale and firearm possession is not sufficiently serious to prevent dismissal with prejudice. And retrying the case is hardly inappropriate in the face of a blatant disregard for Mr. Golston's speedy trial rights.

26

Accordingly, the Indictment must be dismissed. Because the district court did not analyze the statutory factors regarding dismissal with prejudice in its decision below, the case should be remanded for further proceedings so those factors can be properly assessed. *See Giambrone*, 920 F.2d at 180 (citing *Taylor*, 487 U.S. at 336-37).

## Point II

### Mr. Golston's motion to suppress evidence seized from the Samsung Cellphone should have been granted.

The district court erred when it denied Mr. Golston's motion to suppress returns from a search of the Samsung Cellphone that was seized when he was arrested.[5] The evidence from the cellphone should have been suppressed because the government violated the Fourth Amendment when it waited 37 days to seek a search warrant – facts that are on all fours with those that this Court found to have violated the Fourth Amendment in *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020).

---

[5] The government never challenged Mr. Golston's standing based on his affidavit claiming ownership of the cellphone. DE 48.

27

### A.    Applicable Law

### 1.    The Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment rights against the government interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). "The right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that the police will act with diligence to apply for the warrant." *Smith*, 967 F.3d at 205. Notably, "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998).

In *United States v. Smith*, the Court held that a 31-day delay between the defendant's arrest and when the government applied for a search warrant was unreasonable and violated the Fourth Amendment. 967 F.3d at 202. In *Smith*, the Court set forth four factors to evaluate the reasonableness of a delay: (1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized item, and (4) the strength of the state's justification for the delay. *Id.* at 206.

28

### 2. The exclusionary rule

Where a court finds a violation of the Fourth Amendment, "the exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence." *Id*. at 211 (citing *Davis v. United States*, 564 U.S. 229, 236–40 (2011); *Herring v. United States*, 555 U.S. 135, 144 (2009)). "The pertinent analysis of deterrence and culpability is objective, not an inquiry into the subjective awareness of arresting officers," and "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145 (internal quotation marks omitted).

### 3. Standard of review

When reviewing the denial of a motion to suppress, the Court reviews the district court's conclusions of law *de novo* and the findings of fact for clear error. *Smith*, 967 F.3d at 204-205 (citing *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019)). This Court does not "view the evidence in the government's favor . . . and instead simply appl[ies] the clear error standard." *United States v. Pabon*, 871 F.3d 164, 174 (2d Cir. 2017). A factual finding is "clearly erroneous" even "if there is evidence to support it" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

29

*United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985) (internal quotation marks omitted)). The district court's suppression ruling may be affirmed "on any ground that finds support in the record." *United States v. Ganias*, 824 F.3d 199, 208 (2d Cir. 2016) (*en banc*).

### B.     Analysis

#### 1.     The delay in applying for a search warrant violated the Fourth Amendment and this Court's precedent.

The government waited 37 days to apply for a search warrant after it seized the Samsung Cellphone incident to Mr. Golston's arrest. A. 95-122. In *Smith*, the Court held that a 31-day delay between arrest and applying for a search warrant violated the Fourth Amendment. 967 F.3d at 202. The four factors set forth in *Smith* all decisively weigh in favor of suppressing the cellphone here. The first factor, the length of the delay, clearly demonstrates a Fourth Amendment violation. *Smith*, 967 F.3d at 206-07 (finding a 31-day delay "unreasonable" and "weighs substantially in favor" of the defendant). "If the police have seized a person's property for the purpose of applying for a warrant to search its contents, it is reasonable to expect that they will not ordinarily delay a month or more before seeking a search warrant." *Id.*

30

The second factor – the importance of the seized property to the defendant – also weighs in favor of suppression. The Samsung Cellphone contained a "sheer volume of data" that "raises a significant likelihood that much of the data on the device that has been seized will be deeply personal and have nothing to do with the investigation of criminal activity." *Id.* at 207. Counsel noted below that, within the 39,708-page extraction report generated from the Samsung Cellphone, the government ultimately found that only 168 pages – a tiny fraction of the phone's overall contents – were appropriately seized under the search warrant. DE 36 at 3. Thus, Mr. Golston had a strong privacy interest in the contents of the Samsung Cellphone.

The third factor also weighs in Mr. Golston's favor: he had a strong, rather than reduced, property interest in the seized phone. It was taken from him involuntarily and he never consented to searching it. It should have already been returned to him before the government applied for the warrant on July 14th because he had been in jail for more than 14 days without a preliminary hearing – meaning he should have been released with his property returned under Rule 41(g). There is no allegation that there was another co-owner of the phone.

As to the fourth and final factor – the justification for the delay – the government has provided none that satisfies the requirements in *Smith*. Notably, the search warrant application's probable cause statement refers to nothing other

31

than the facts of Mr. Golston's arrest and generalized statements about people alleged to have sold drugs. *See* A. 109-111.

### 2. The district court did not correctly analyze the *Smith* factors.

The district court denied Mr. Golston's argument that the 37-day delay between seizing the phone and applying for a search warrant was unreasonably long under the Fourth Amendment because it determined that, on balance, the *Smith* factors slightly favored the government. The court also ruled that suppression was not warranted because the government had not demonstrated deliberate, reckless, or grossly negligent conduct. A. 140. In so doing, the court mis-analyzed the *Smith* factors.

The district court correctly found that the first and second factors favored Mr. Golston. A. 140. As *Smith* made clear, "the search and seizure of personal electronic devices like a modern cell phone or tablet computer implicates different privacy and possessory concerns than the search and seizure of a person's ordinary personal effects." *Id.* at 208. The Supreme Court has recognized the enormous quantity of highly personal data that is typically stored on modern cellphones, opining that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Riley v. California*, 573 U.S. 373, 393 (2014). Additionally, although the court

erroneously stated that Mr. Golston did not request that the government return the smartphone, defense counsel corrected this error during the hearing, reminding the court that both Mr. Golston and his mother promptly requested the return of the phone through prior counsel. A. 139-141, 158.

However, the district court erroneously concluded that the third and fourth factors favored the government. The district court found that the third factor – whether Mr. Golston had a reduced property interest in the phone – weighed in favor of the government because the phone was lawfully seized incident to Mr. Golston's arrest, and because he was detained pretrial and therefore could not use or possess the device. A. 140-141. But Mr. Golston had a strong property interest in his seized phone. It was taken from him involuntarily and he never consented to searching it. As the Court made clear in *Smith*, "the existence of probable cause diminished [the defendant's] property interest in the tablet for only so long as it was reasonable for the police to wait before obtaining a warrant to search its contents." 967 F.3d at 209. Because the defendant otherwise retained a strong property interest in the device, the Court concluded that the third factor was either neutral or weighed in his favor. *Id*. The fact that Mr. Golston is in jail does not eliminate his property interest – the Fourth Amendment is understood to protect "the privacies of life" against "arbitrary power." *Carpenter v. United States*, 585 U.S. 296, 305 (2018) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

33

For over half a century, the Fourth Amendment's touchstone has been what has come to be known as a "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 351-53 (1967). Indeed, cellphones frequently contain the most private of communications and the unseized material is vast. Mr. Golston retained a reasonable expectation to keep those matters private, even while he was in custody. If the government had probable cause it should have searched the phone right away, as required under *Smith*. Accordingly, the district court erred in finding that the third factor favored the government.

The district court also found that the fourth factor favored the government and concluded that its justification for the delay was sufficient. The court credited the government's argument that because the arrest was sudden it needed to continue investigating the offense conduct in the intervening 37 days, including by sending the seized substances to a lab to be tested. A. 141. But that was clearly erroneous because the affirmation in support of the search warrant did not even mention the drug tests. A. 101-112. Moreover, including that information would not have augmented the probable cause that ***the cellphone*** contained evidence of a crime. The government's proffered excuses were insufficient under *Smith*. The government made a similar argument in that case and the Court rejected it, finding that the fourth factor instead favored the defendant. The *Smith* Court did not accept

that the government's other investigatory tasks justified the delay. As the Court

explained:

> The fact that a police officer has a generally heavy
> caseload or is responsible for a large geographical district
> does not without more entitle the officer to wait without
> limit before applying for a warrant to search an item that
> the officer has seized. That is because the Fourth
> Amendment imposes a time-sensitive duty to diligently
> apply for a search warrant if an item has been seized for
> that very purpose, and all the more so if the item has been
> warrantlessly seized. The police may not overlook this
> duty to attend to other matters for which the Constitution
> imposes no such time-sensitive duty unless there are
> important reasons why other matters must take priority.
> 'After seizing an item without a warrant, an officer must
> make it a priority to secure a search warrant that complies
> with the Fourth Amendment.'

*Smith*, 967 F.3d at 210 (quoting *United States v. Burgard*, 675 F.3d 1029, 1035

(7th Cir. 2012)).

Here, there was no dispute that the search warrant application contained only

information already known to the government on the date of the arrest. Although

the government argued that it took additional investigative steps, including

preparing vouchers, those vouchers were filled out on the date of the arrest and did

not explain the remaining 36 days of delay. *See* A. 101-112. As to the need to send

the seized substances to a lab for testing, this is another example of the simple task

of filling out a form – it does not justify a month of delay.

The district court's conclusion on this point is at odds with *Smith*, which specifically held that time taken to manage basic paperwork and case management tasks does not relieve the government of its obligations under the Fourth Amendment. 967 F.3d 210-11. The facts of Mr. Golston's case are materially the same as those in *Smith* – the officers here engaged in very little investigation between seizing the cellphone and applying for a search warrant over four weeks later. *See id*. The district court should have found that the fourth factor favored Mr. Golston as well.

The *Smith* factors clearly favor suppression, and the district court erred in finding that the delay was reasonable under the Fourth Amendment.

### 3. The exclusionary rule applies.

Finally, the district court reasoned that even if the *Smith* factors did not favor the government, there was no evidence of any deliberate, reckless, or grossly negligent conduct which would warrant suppression. A. 140. In *Smith*, the Court found that although the delay constituted a Fourth Amendment violation, the exclusionary rule did not apply in that case because, based on the case law at that time, from an objective standpoint a reasonably well-trained officer would not necessarily have known that the month-long delay amounted to a Fourth Amendment violation. 967 F.3d at 212. However, the Court made clear in *Smith* that officers could not rely on such unawareness going forward:

36

> [W]e have stated and clarified principles above that shall guide law enforcement officers with respect to what circumstances establish an unreasonable delay under the Fourth Amendment. We have discussed how the length of delay has independent weight as a factor and how a delay of one month or more is ordinarily too long for an officer to apply for a warrant. We have described how seizure of personal electronic storage and communication devices must be given heightened consideration in terms of the defendant's interests. And we have explained how the general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence. These principles shall likewise inform the application of the exclusionary rule in future cases.

*Id.* at 213. Thus, the government was on notice after *Smith* was decided in 2020 that it could not wait for more than a month to apply for the search warrant without substantial justification. The evidence seized from the cellphone should be excluded.

### 4. Mr. Golston was harmed by the cellphone evidence.

At trial, the government called a witness to discuss the contents of the cellphone and to read them to the jury. A. 204-208. It then emphasized the evidence during summation, reading to the jury text messages from Mr. Golston's phone and posting the messages in a summation slide show for jurors to read themselves. A. 225. In *United States v. Babwah*, this Court highlighted the government's emphasis of improperly admitted evidence in summations when it found harmful error, and remanded for a new trial despite the existence of

37

sufficient evidence to support a conviction. 972 F.2d 30, 34 (2d Cir. 1992); *see also Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) ("Because the rifle was plainly damaging evidence against the petitioner with respect to all three of the charges against him, its admission at the trial was not harmless error."). Under these circumstances, the government error was not harmless: the government cannot show that it is "highly probable" that the error "did not contribute to the verdict." *United States v. Kaiser*, 609 F.3d 556, 573 (2d Cir. 2010).

Each of the four factors highlighted in *United States v. Vayner*, 769 F.3d 125, 133 (2d Cir. 2014), supports a harm finding. First, the evidence did not strongly support a finding that Mr. Golston possessed narcotics with intent to distribute them. *Id*. The government understood this, and therefore moved *in limine* to offer text messages from the illegally searched cellphone over forceful defense objection. DE 43 at 19-24. It described the cellphone's contents as "highly probative" and "direct evidence of the narcotics trafficking activity relevant to Counts One and Three." *Id.* at 23. In its summation, the government asked the jury, "How do you know that the defendant dealt drugs?" A. 225. It answered in part by reading messages from his cellphone. *Id.*

For the same reasons, the second and third factors – "the government's conduct with respect to the improperly admitted evidence" and "the importance of the wrongly admitted evidence" – also support a harm finding. *Vayner*, 769 F.3d at

38

133. The government emphasized the cellphone's contents during its summation because it was central to its case that Mr. Golston "dealt drugs" and thus possessed drugs with intent to distribute. Nor was the evidence cumulative, which is the fourth *Vayner* factor. *Id.* The text messages from the phone vividly describing prior drug sales were uniquely strong evidence as to Mr. Golston's status a person who "dealt drugs."

It bears emphasis that the government fought through *in limine* motion practice to admit the cellphone evidence over the defense's objection because it knew how central and important it would be. It insisted that the cellphone evidence was admissible under Rule 403, arguing that it was probative and therefore implicitly that it was not cumulative. It should not now be heard to argue that the evidence was "harmless."

## Point III

**The government's misstatement of law regarding the nexus element of 18 U.S.C. § 924(c) deprived Mr. Golston of his right to a fair trial and he should be granted a new trial on Count Three.**

The government misstated the elements of the § 924(c) charge (Count Three) during its rebuttal summation, mis-instructing the jury that mere accessibility of the firearm while selling drugs was "all you need" to find the necessary nexus between a narcotics crime and the gun. After deliberating for

39

several hours, the jury reached a verdict on the narcotics and gun **possession**

charge, but had deadlocked on Count Three, the § 924(c) charge. This necessarily

meant that they had deadlocked on the nexus element – the very element on which

the government misstated the law. The district court instructed the jury to keep

deliberating, and after five more hours it convicted Mr. Golston of the § 924(c)

count. Absent the government's misconduct, he would have been acquitted on

Count Three – or at minimum a conviction on that count was far from certain.

### A. Applicable Law

#### 1. Section 924(c) requires "some nexus" between the firearm and a predicate offense.

 Section 924(c) does not punish merely possessing a firearm. It is a harsh

additional penalty for offenses that involve using a firearm "during and in relation

to" or "in furtherance of" specific crimes, including most federal narcotics

offenses. 18 U.S.C. § 924(c)(1)(A). Based on this statutory limitation, this Court

holds that "the mere presence of a weapon at the scene of a drug crime, w*ithout*

*more*, is insufficient to prove that the gun was possessed 'in furtherance of' the

drug crime." *United States v. Snow*, 462 F.3d at 62 (quoting *United States v.*

*Castillo*, 406 F.3d 806, 814 (7th Cir. 2005)) (italics in original). "Accordingly, the

government cannot convict under § 924(c)(1)(A) by relying on the generalization

that 'any time a drug dealer possesses a gun, that possession is in furtherance,

because drug dealers generally use guns to protect themselves and their drugs.'" *Id.* (quoting *United States v. Ceballos–Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)).

### 2. Government misconduct during summation

"It is well-settled that both the prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence, refer to facts not in evidence, or express counsel's personal belief as to guilt or innocence." *United States v. Smith*, 778 F.2d 925, 929 (2d Cir. 1985) (quotation marks and citation omitted). "An improper summation will only warrant a new trial when the challenged statements are shown to have caused substantial prejudice to the defendant; rarely will an improper summation meet the requisite level of prejudice." *United States v. Daugerdas*, 837 F.3d 212, 227 (2d Cir. 2016) (quoting *United States v. Mapp*, 170 F.3d 328, 337 (2d Cir. 1999)). In other words, "[t]he defendant must show not simply that a particular summation comment was improper, but that the comment, viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, such that the resulting conviction was a denial of due process." *United States v. Sheehan*, 838 F.3d 109, 127-28 (2d Cir. 2016) (internal quotation marks omitted). In considering whether a prosecutor's remarks rise to the level of prejudicial error, courts examine "the severity of the misconduct, the measures adopted to cure the misconduct, and

41

the certainty of conviction absent the misconduct." *United States v. Coplan*, 703

F.3d 46, 86 (2d Cir. 2012) (quoting *United States v. Gansman*, 657 F.3d 85, 96 (2d

Cir. 2011)).

### 3. Standard of Review

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict

stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134

(2d Cir. 2001). The Court reviews a denial of a Rule 33 motion for abuse of

discretion. *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013). "A district

court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests

on an error of law (such as application of the wrong legal principle) or a clearly

erroneous factual finding, or (2) its decision—though not necessarily the product

of a legal error or a clearly erroneous factual finding—cannot be located within the

range of permissible decisions." *United States v. Forbes*, 790 F.3d 403, 406 (2d

Cir. 2015) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

### B. Analysis

### 1. The government engaged in severe misconduct when it misstated the § 924(c) count's nexus element.

The government's misconduct was severe because it misstated the element

that was the central focus of the trial during its rebuttal summation, after the

defense lacked the ability to respond before the jury. The district court found

otherwise, ruling that, while the government's statement of the law was imprecise, it was not unreasonable in light of the other evidence. A. 256-261. This analysis was mistaken.

During its initial summation, the government accurately described the § 924(c) "nexus" requirement consistent with the parties' understanding of the district court's charge. A. 277. It argued that the nexus was met because there was evidence to find that Golston possessed the firearm to protect the $110 in cash and the drugs that were recovered from his person:

> Now, I expect that Judge Torres is going to tell you what it means for a firearm to be possessed in furtherance of drug trafficking, and you are required, to be clear, to listen to her, not me, when it comes to instructions on the law. But I expect that Judge Torres will tell you something like this, that for you to conclude that the firearm was possessed in furtherance of drug dealing, **the firearm must have had something called a nexus, some purpose or effect with respect to the underlying drug offense such as where the firearm is readily accessible to protect drugs, drug proceeds, or the drug dealer himself.** And in deciding whether the gun was used for such a purpose, you may consider various factors. Judge Torres will explain those to you later . . . . You may consider whether the gun was accessible. Was it loaded? What type of gun was it? Did the defendant legally possess it? What type of drug activity was happening and how close was the gun to drugs or drug money?

*Id*. (emphasis added).

In its summation, defense counsel responded that Mr. Golston's personal effects were not so valuable that they were worth protecting with a firearm – approximately $110 in cash and some bags of drugs. A. 233. Addressing the government's argument that Mr. Golston's possessions were so valuable that he needed the gun to defend them, defense counsel noted that an ordinary iPhone and name brand shoes are worth more money than what Mr. Golston possessed, and yet ordinary New Yorkers do not carry guns to protect those kinds of items. *Id.* Of course, merely possessing a gun simultaneously with drugs does not make one guilty under § 924(c). *See Snow*, 462 F.3d at 62.

Chastened by this argument, the government responded in rebuttal – after the defense no longer had another opportunity to address the jury – by misstating the law and reformulating the nexus element as only requiring "accessibility of the gun" while possessing drugs:

> Another argument [defense counsel] made was that this gun, if Mr. Golston did have it, which of course he did, somehow didn't promote his drug selling, that it had nothing to do with the fact that he was selling drugs that day. That's also a ludicrous argument. As part of this, [defense counsel] said to you that that amount of money that Joshua Golston had on him wouldn't be worth protecting. First of all, that is offensive. Second of all, that statement ignores the valuable drug stash that Joshua Golston was also protecting with that gun. You saw the video. The defendant does one thing and only one thing while he's carrying that gun. He sells drugs. That gun is accessible to him the entire time.

> Some of the other facts [the government] pointed out—
> **and we could just stop right there, ladies and
> gentlemen—that accessibility of the gun during those
> drug deals, that's all you need.** It speaks for itself, but
> you can think back to those other facts, too, the gun being
> strapped to his chest filled with bullets, the fact that the
> [Defendant] wasn't even allowed to possess a gun because
> he'd been previously convicted of a felony, the fact that
> the serial number was drilled out. All of these things tell
> you that gun was possessed for drug dealing, not for some
> other innocent purpose.

A. 237.

The government thus instructed the jury precisely contrary to what the

Court's precedents have endeavored to guard against – the possibility that a person

could be convicted under § 924(c) simply on the basis of accessibility of a firearm.

*See Snow*, 462 F.3d at 62-63; *United States v. Lewis*, 62 F.4th at 745–46. This is

particularly true in the context of this specific charge. § 924(c) imposes draconian

mandatory consecutive prison time and takes discretion away from the court. This

statute often doubles the length of a sentence, if not more, and it is imperative that

the jury consider guilt on such a count based on correct statements of law.

The district court denied the defense request that it provide a curative

instruction to address the government's misstatement of the law. A. 247. Nor

would it grant a new trial, reasoning that accessibility of a firearm during a drug

crime is just one relevant factor to the ultimate question of whether the gun

provided some advantage with respect to drug trafficking. A. 256-261. The district court noted that parties are "entitled to wide latitude" in summations and concluded that the government did not prejudice Mr. Golston by focusing on accessibility, since it also noted other factors relevant to nexus. A. 260.

However, as discussed below, the government's misstatement of the nexus requirement was severe, and the jury's resulting confusion was evident when it later deadlocked on that critical element.

### 2. The district court did not take sufficient steps to cure the misconduct.

After the summations, the district court issued the following jury charge regarding the nexus element:

> To possess a firearm in furtherance of the crime means the firearm helped forward, advance, or promote the commission of the crime. The mere possession of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have had some nexus, that is some purpose or effect with respect to the underlying drug offense; such as where the firearm is readily accessible to protect drugs, drugs proceeds or the drug dealer himself. In deciding whether there is such a nexus, you may consider the accessibility of the firearm, whether the firearm was loaded, the type of weapon, whether or not the defendant legally possessed it, the type of drug activity conducted, whether the firearm was stolen, the time and circumstances under which the firearm was found, and the proximity of the firearm to drugs or drug profits. This list of factors is not exclusive, but it helps to distinguish between possession in furtherance of a crime, and innocent possession, such as a drug dealer who possesses a wall-

46

> mounted antique or an unloaded rifle that is locked in a
> cupboard and used for target shooting or in a hunting
> game.

A. 243.

Defense counsel objected to the government's rebuttal statement that "all you need" to find a nexus is "accessibility" and requested a curative instruction. A. 247. The government objected to any curative instruction, and the district court declined to issue one, noting that it had already "made a very explicit instruction, and that there was not "any further curative instruction needed." *Id*.

It was clearly not enough for the district court to merely issue an accurate charge without more because the government had misstated the law in a way that the jury instruction did not specifically correct – in light of the misconduct, the court should have provided a curative response to the government's final misstatement of the law. The district court's charge would have been sufficiently worded had it been delivered following proper summations. But it was not worded in a way that corrected the government's misstatement about the nexus element and thus allowed the misstatement to linger in the jurors' minds during deliberations. That the government opposed any curative instruction compounded the error. *Id*.

In denying Mr. Golston's Rule 33 motion, the district court concluded that any error was neutralized when the court subsequently issued an accurate

47

instruction to the jury, and advised the jury that it must follow the court's instructions on the law if they differed from counsel's statements. A. 260-261. This was simply not enough.

### 3. The conviction was far from certain absent the misconduct.

The jury's confusion about the nexus element was made abundantly clear when it deadlocked on that point during deliberations. After deliberating for approximately four hours, the jury sent a note stating that it was hung on the § 924(c) count:

> We the jury have reached a verdict on Counts One and Two. We are a hung jury on Count Three. We have members that refuse to change their vote on both sides. What is the next step, please?

A. 252.

The jury's note made clear that the jury had convicted Mr. Golston of Counts One and Two – without a conviction of Count One (the narcotics count) the jury was not permitted by the verdict sheet to proceed to Count Three, and it would make no sense for the jury to be hung on Count Three absent a conviction on Count Two (the felon-in-possession count). The note also made clear that the jury was specifically hung on the nexus element. That is because after the jury concluded that Mr. Golston both sold drugs and possessed a gun, the only question

48

left on the § 924(c) count is whether the possession was "during and in relation to," or "in furtherance of," the drug trafficking crime.

The district court instructed the jury to continue deliberating. A. 252. Following nearly five more hours of deliberation the next day – without another note – the jury reached a verdict convicting Mr. Golston of all counts. A. 255.

In denying Mr. Golston's post-trial motion, the court ignored that the jury was so confused by the government's misstatement of law that it deadlocked precisely on the nexus element. Although the court acknowledged that the jury expressed some difficulty in arriving at the verdict, it found that Mr. Golston did not show that "absent the isolated impropriety of the prosecutor in rebuttal summation (taken in the context of the entire trial)," he would not have been convicted. A. 261. In denying Mr. Golston's motion for a new trial on Count Three, it ruled that the government had offered ample evidence to support a finding of guilt beyond a reasonable doubt and had demonstrated a "certainty of conviction absent the [purported] misconduct." *Id*.

But Mr. Golston's conviction on Count Three was far from certain – as explained above, the jury was clearly deadlocked on that count because it was focused on the nexus element. Absent the government's misstatement of the law, the jury would likely have acquitted Mr. Golston of Count Three. The question here is not one of sufficiency of the evidence – it is instead whether there is

49

"certainty of conviction absent the misconduct." *Coplan*, 703 F.3d at 86. The court cannot have certainty about a conviction on Count Three because the jury was hung on that count. And they were confused precisely because the government misstated the nexus element of the law.

Taken together, the factors demonstrate that the government's misconduct rose to the level of prejudicial error and the district court erred in concluding otherwise. This is a case where the jury may very well have convicted Mr. Golston of a charge on which he was actually innocent – he was not guilty under § 924(c) solely if he possessed a gun and drugs simultaneously. Mr. Golston is entitled to a new trial on Count Three.

## CONCLUSION

For the foregoing reasons, Joshua Golston respectfully requests the following

relief:

1. For the reasons stated in Point I, the Indictment should be dismissed and the case remanded for further proceedings to determine whether the dismissal should be with prejudice; and

2. For the reasons stated in Point II, the convictions should be vacated and the case remanded with instructions for a retrial excluding the cellphone evidence; and

3. For the reasons stated in Point III, the § 924(c) conviction (Count Three) should be vacated and a new trial ordered on that count; and

4. Such further relief as the Court deems just and proper.


Dated: New York, New York
     December 11, 2024              Respectfully submitted,

                               /s/_____

                               Megan Wall-Wolff
                               Wall-Wolff LLC
                               299 Broadway, Suite 800
                               New York, NY 10007

                               Benjamin Silverman
                               Law Office of Benjamin Silverman
                               224 West 30th St., Suite 302
                               New York, NY 10001

                               *Attorneys for Joshua Golston*

51

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 11,956 words, inclusive of footnotes, and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

 /s/ Benjamin Silverman
Benjamin Silverman